OPINION
Defendant-appellant Ivan Burton appeals the February 3, 2000 Judgment Entry of the Licking County Court of Common Pleas which found appellant guilty of possession of cocaine and sentenced him accordingly. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On September 21, 1999, appellant was stopped for speeding. In the course of the traffic stop, Trooper Ricardo Jones of the Ohio Highway Patrol determined appellant lacked valid driving privileges. Further, appellant was driving a rental car which had been rented by appellant's girlfriend, Latasha McNeal. The rental agreement prohibited any person, other than Ms. McNeal, from operating the rental vehicle. Ms. McNeal was not present at the time of the stop. Trooper Jones ordered appellant and his passengers to exit the vehicle. Appellant was accompanied by a female acquaintance and her infant. Appellant was patted down and placed in the rear of the police cruiser, but not handcuffed. Trooper Jones told appellant he was not under arrest but would be transported from the scene to the patrol post. Once they reached the patrol post, appellant could arrange for alternative transportation. The vehicle would be towed from the scene. Appellant was unable to leave the cruiser. He was separated from the driver's compartment by a "cage" and the doors could not be opened from the inside. The female passenger and her infant were not placed in the cruiser. Arrangements were made for a friend to come and pick them up at the scene. Trooper Jones proceeded to inventory the vehicle for impoundment. While searching the vehicle, Trooper Jones discovered what he suspected to be contraband. Immediately following this discovery, Trooper Jones approached appellant, who was still secured in the back of the police cruiser, opened the door, and asked appellant "who the crack belong[ed] to?" Appellant answered it was his and he had placed the drugs in the console where they had been found by Trooper Jones. Based upon this admission, Trooper Jones removed appellant from the cruiser and put him in handcuffs and placed him under arrest. Trooper Jones did not inform appellant of his Miranda rights prior to the questioning which elicited the inculpatory statements. On September 30, 1999, the Licking County Grand Jury indicted appellant on one count of possession of crack cocaine, in violation of R.C. 2925.11(A)(C)(4)(c). On October 12, 1999, appellant pled not guilty to the charge. On November 15, 1999, appellant filed a Motion to Suppress the physical evidence and the statement/confession appellant made at the scene. The trial court conducted a hearing on the motion on January 4, 2000. At the suppression hearing, appellant testified he felt "secured" and did not feel as if he could leave the scene after Trooper Jones removed him from the rental car. He did not feel he had permission to walk away and even though he asked to contact a friend to pick him up at the scene, appellant testified Trooper Jones told him the friend would have to pick him up at the Highway Patrol. Appellant, who had been arrested before, further testified on previous occasions when he was arrested, he had been handcuffed. Trooper Jones provided a slightly different version of the events surrounding the decision to return appellant to the station. Although the testimony was vague, Trooper Jones testified the decision to return appellant to the station was mutual. Apparently, appellant did not want to be transported with his female passenger because he did not want Ms. McNeal to know about his contact with another woman. On January 18, 2000, the trial court denied appellant's motion to suppress. Specifically, the trial court found appellant lacked standing to challenge the search of the vehicle as he was not the vehicle's owner. The trial court further found any deficiency in the inventory of the vehicle did not warrant a suppression of the physical evidence, and appellant was not in custody at the time the challenged statement was made. On February 3, 2000, appellant withdrew his plea of not guilty and entered a plea of no contest to the charge contained in the indictment. In a judgment entry of the same date, the trial court accepted appellant's plea of no contest, found appellant guilty of possession of crack cocaine, and sentenced appellant to a determinate sentence of three years. It is from this judgment entry appellant prosecutes his appeal, assigning as error the following:
 I. THE TRIAL COURT COMMITTED HARMFUL ERROR IN DETERMINING THAT THE DEFENDANT-APPELLANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE FAILED TO PRESENT A CLAIM THAT WAS LEGALLY SUFFICIENT TO WARRANT AN EVIDENTIARY HEARING ON THE MATTER.
 II. THE TRIAL COURT COMMITTED HARMFUL ERROR IN DENYING THE DEFENDANT-APPELLANT'S MOTION TO SUPPRESS ALLEGED STATEMENTS ATTRIBUTED TO THE DEFENDANT-APPELLANT.
 I
In appellant's first assignment of error, he maintains the trial court erred in determining appellant's motion to suppress the physical evidence failed to present a claim which was legally sufficient to warrant an evidentiary hearing. The trial court found appellant lacked standing to challenge the search and further concluded State v. Herold (Nov. 12, 1999), Licking App. No. 99-CA-0058, unreported, conclusively determined the issue. Appellant maintains these conclusions are erroneous and constitute harmful error. We disagree. There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See: State v. Fanning (1982), 1 Ohio St.3d 19; State v. Klein (1991), 73 Ohio App.3d 486, State v. Guysinger (1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See: State v. Williams (1993), 86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93, 96, State v. Claytor (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906,908, and State v. Guysinger (1993), 86 Ohio App.3d 592. As the United States Supreme Court held in Ornelas v. U.S. (1996),116 S.Ct. 1657, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal." In his brief to this Court and his motion to suppress, appellant challenges the validity of the inventory search on two grounds. First, appellant contends Trooper Jones did not comply with department procedures and policy for conducting an inventory search. Ohio Highway Patrol inventory policy mandates an inventory search must be conducted until "completed" and should not be halted, even if contraband is encountered during the inventory. Administrative Inventory Policy, Section II, para. D. attached as Exhibit H to Defendant's Motion to Suppress. Second, appellant alleges the inventory was invalid because it failed to comply with patrol procedure 10-25D as set forth in Exhibit C to Defendant's Motion to Suppress. This procedure states that an investigating officer "shall" offer the operator of the vehicle the opportunity to review the inventory and acknowledge its accuracy. The officer is to sign as a witness or otherwise indicate on the form the opportunity was provided to the operator to make this review. Appellant maintains Trooper Jones' failure to comply with the written and established policies makes the search invalid and any evidence obtained therefrom fruit of the poisonous tree. We disagree with this contention. Even if Trooper Jones failed to strictly comply with Department procedures and policy as to procedural safeguards regarding the manner in which he conducted the search, we do not find such noncompliance renders the inventory search invalid. As we stated in State v. Herold (Nov. 12, 1999), Licking App. No. 99-CA-0058, unreported: The purpose of the procedures and policy relied upon by appellant is to ensure the credibility of an officer's testimony regarding the contents found within an impounded vehicle, not to verify the legality or necessity of the underlying search itself. Thus, any failure to conduct a search according to Department guidelines would go to the weight of the officer's testimony. The Ohio State Highway Patrol has a policy which permits an inventory search under certain circumstances, once met, the steps undertaken in conducting that search are not sufficient grounds upon which to attack the validity of the search itself. We find the failure to have a witness to the inventory does not require suppression of the evidence found. Accordingly, we find the trial court did not err in denying appellant's Motion to Suppress.
We agree with and follow the reasoning stated in Herold, supra. We also agree with the trial court appellant lacked standing to challenge the search. Suppression of evidence obtained in violation of the Fourth Amendment can be urged only by those whose rights were violated by the search itself. Standing is not achieved solely by a person's status as a defendant or by introduction of damaging evidence. Alderman v. United States (1969), 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176. Consequently, before a court may review the reasonableness of police behavior, the defendant must be able to demonstrate that his Fourth Amendment right to privacy was violated. In Rakas v. Illinois (1978), 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387, defendants were passengers in an automobile that had been lawfully stopped on reasonable suspicion but unlawfully searched. The search uncovered a sawed-off rifle under the passenger seat and a box of rifle shells in a locked glove compartment, which helped to link the defendants to a robbery. The defendants claimed standing because of their lawful presence as passengers. The Rakas Court held that although the defendants were legitimately present in the vehicle, that did not give them a legitimate expectation of privacy in the searched vehicle. The Court held that they had neither a property nor a possessory interest in the automobile, nor did they have a legitimate expectation of privacy in the glove compartment or the area under the seat of the car in which they were merely passengers. The Ohio Supreme Court has held that one who is in lawful possession of a vehicle, though not the title owner, has a legitimate expectation of privacy in the vehicle and standing to assert a Fourth Amendment claim arising out of the unlawful search of the vehicle. State v. Carter (1994), 69 Ohio St.3d 57,630 N.E.2d 355; see, also State v. Hines (1993), 92 Ohio App.3d 163,634 N.E.2d 654. As a general rule, a person operating a motor vehicle without the permission of the owner, has no standing to challenge the validity the search of that vehicle. State v. Crickon (1988), 43 Ohio App.3d 171 (emphasis added). Appellant concedes he did not own the vehicle and he was not authorized by the rental agreement to operate the vehicle. Further, the rental agreement did not give Ms. McNeal authority to give appellant permission to operate the vehicle. Appellant was not in lawful possession of the vehicle. We agree with the trial court appellant lacked standing to challenge the inventory search of the vehicle. Appellant's first assignment of error is overruled.
 II
In his second assignment of error, appellant maintains the trial court erred in failing to suppress appellant's inculpatory statements. We agree. It is well settled a traffic stop constitutes seizure of an individual operating the motor vehicle stopped. Delaware v. Pruse (1979), 440 U.S. 648. It is equally well settled, and accepted, this type of limited seizure does not typically trigger the need for procedural safeguards required in custodial interrogations. Ohio v. Robinette (1996), 519 U.S. 33. However, the issue in this case is whether appellant was "in custody", triggering the protections set forth in Miranda v. Arizona (1966), 384 U.S. 436. Miranda describes custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda at 444. Custody encompasses a formal arrest or restraint of movement of the degree associated with a formal arrest. California v. Beheler (1983), 463 U.S. 1121, 1125, 103 S.Ct. 3517,77 L.Ed.2d 1275. Under this standard, a suspect is in custody if he or she is formally placed under arrest prior to the interrogation. In non-arrest circumstances, the restraint on the suspect's freedom of movement must be significant in order to constitute custody for purposes of Miranda. The United States Supreme Court has defined "interrogation" to include "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." (Footnotes omitted.) Rhode Island v. Innis (1980), 446 U.S. 291, 301,100 S.Ct. 1682, 64 L.Ed.2d 297. Miranda warnings are required when a suspect in custody is subjected to express questioning or its functional equivalent. Id. at 300-301. The trial court concluded appellant was not "under arrest"; therefore, Trooper Jones was not required to administer Miranda warnings. The trial court based this conclusion on the fact Trooper Jones told appellant he was not under arrest and Trooper Jones did not place appellant in handcuffs. However, as stated above, Miranda warnings may be required even when an individual has not been placed under formal arrest. We find appellant was in "custody" for Miranda purposes. Specifically, appellant had been told he would be taken by Trooper Jones to the station. Most important, appellant was placed in the rear of the cruiser and even though not handcuffed, appellant was not free to exit the cruiser on his own. Appellant testified he did not feel free to leave. We find that under the aforementioned circumstances appellant was deprived of his freedom of action in a significant way. Because we find appellant was in custody for Miranda purposes, we next address whether Trooper Jones' questioning concerning who owned the contraband was "interrogation" for Miranda purposes. There were only two adult passengers in the vehicle. Trooper Jones had every reason to suspect appellant may have provided an incriminating response to his question. Accordingly, we find the question was an "interrogation" as defined by the United States Supreme Court decision in Rhode Island v. Inis, supra. Therefore, appellant was entitled to Miranda warnings prior to questioning about the controlled substance found in the vehicle. We agree with appellant the trial court erred in failing to suppress the inculpatory statements obtained without the benefit of Miranda warnings. Appellant's second assignment of error is sustained.
The February 3, 2000 Judgment Entry of the Licking County Court of Common Pleas is reversed. This matter is remanded to the trial court for further proceedings consistent with this opinion and the law.
 ________________________ Hoffman, J.
By: Hoffman, J. Gwin, P.J. and Reader V.J. concur